ST. LOUIS, IRON MOUNTAIN & SOUTHERN RY. CO. *v.* CLARK PRESSED BRICK COMPANY.

Opinion delivered February 19, 1917.

1. RAILROADS—CONTROL OF BY STATE COMMISSION—POWER OF COURTS. —The State has power to create a commission and to give it the power of regulating railroads, and investigating conditions upon which regulations may be directed, and the courts will interfere with the acts of the commission, only when it appears that the commission has transcended its powers.

2. RAILROADS—SWITCHING AND TRANSPORTATION—FREIGHT RATES— AUTHORITY OF RAILROAD COMMISSION.—The action of the Railroad Commission of Arkansas in fixing the carload rate for switching instead of fixing tonnage rates for transportation, for the movement of carload lots of freight between points wholly within the terminal district of the cities of Little Rock and Argenta, *held*, not to be unreasonable, and therefore that such action of the Railroad Commission was not subject to review by the courts.

Appeal from Hot Spring Circuit Court, *W. H. Evans*, Judge; reversed.

*E. B. Kinsworthy* and *R. E. Wiley*, for appellant.

1. Plaintiff was not entitled to recover on the third count of the complaint. No notice was given. Kirby's Digest, § 6733; 62 Ark. 452.

2. There was no unjust discrimination in freight charges. Act Mch. 11, 1899; Kirby's Digest, § 6808-10, etc. The rate collected was the lawful rate and ap-

proved by the R. R. Commission. The switching charges were authorized and reasonable.

3. But the charging of these rates does not operate as a discrimination, because the different rates applied to plaintiff and the Ark. Brick & Mfg. Co. are not applied under the same circumstances. 64 Ark. 275; 73 *Id.* 373; 71 *Id.* 363; 112 *Id.* 147. No undue discrimination is shown. The conditions and circumstances surrounding the industries are not the same, but entirely unlike. Cases *supra.*

4. Plaintiff paid only the lawful, established charges on the shipment. It is not damaged. Kirby's Digest, § 6808, 6813.

5. The carrier is bound by the tariff as fixed by the Railroad Commission and the court and is not bound or liable civilly or criminally for collecting a rate fixed by the R. R. Commission. If the rate is discriminatory or unjust the remedy is given by § 6810, Kirby's Dig. If the tariff was unjust, plaintiff should have brought suit to enjoin. 204 U. S. 426.

6. To sum up: Plaintiff cannot recover on the third count because its claim was not filed in accordance with § 6733, Kirby's Digest. Nor can it recover on the first and second counts, because defendant collected only the rate established by the R. R. Commission and the Act, and no damage recoverable under § 6808 was shown. If a competitor was charged less the remedy was by suit under § 6813 for the penalty.

7. The court erred in its findings and judgment.

*Mehaffy, Reid & Mehaffy,* for appellee.

1. There was unjust discrimination in the charges. The question is: What is the difference between a "road haul" and a "switching movement." This has been directly decided in 155 Ill. 283, affirmed in 93 N. E. 312. See also 35 S. E. 369.

2. There is no difference in business or circumstances. The orders of the Railroad Commission are not impervious to attack collaterally. 112 Ark. 147.

3. The statutes with respect to unjust discrimination are declaratory of the common law.    95 Ark. 251.

4. The charge for "town switching" is unjust and discriminatory.    155 Ill. 283; 93 N. E. 312.    There is no distinction or difference between the movements of cars by appellee and the Ark. Brick Co., a competitor in business.    The discrimination is apparent.

Hart, J.    Appellee, Clark Pressed Brick Company, instituted this action in the circuit court against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for unjust discrimination in freight charges and to recover the statutory penalties for the same, and upon trial before the court sitting as a jury obtained a judgment for $2,000.00.    The railway company has appealed to this court.

The complaint contained three counts.    The first appears to have been based upon section 6808 of Kirby's Digest providing for double damages against railroads for unjust discrimination in freight charges against shippers.    The second count appears to be a common law action to recover damages for unjust discrimination in freight charges.    The third count is based upon section 6733 of Kirby's Digest providing for the payment of a penalty by railroad corporations unjustly discriminating in freight charges against shippers.

The views we shall hereinafter express render it unnecessary for us to determine whether or not the three counts were properly embraced in one action. For this reason we shall proceed immediately to a statement of facts necessary to a determination of the issues on the merits raised by the appeal.

The cities of Little Rock and Argenta have a combined population of about 65,000, and three different railroad carriers including appellant, operate lines through said cities.    Each road is engaged in both interstate and intrastate commerce and the cities named are necessary and convenient points to locate division headquarters and terminal facilities for making up of trains, for unloading and feeding live stock, and

for shops for repairing cars, etc. The cities are also distributing points for freight throughout the State of Arkansas. Therefore it was necessary to establish what may be called terminal or yard facilities including switching tracks, industrial tracks, spur tracks, side tracks, team tracks and. storage tracks, etc. Each of said railroad carriers fixes its own yard limits in the two cities within which the movement and shifting of cars is conducted by switching under the charge of the yard master. The regular trains are operated under the direction of the train-master. When the yard limits are fixed by the general manager, they are designated by signs marked "yard limit." These signs indicate to the operatives of trains where they must conform to the yard rules. Each line of road has numerous spur or industrial tracks connected with its main line in said cities. The railroads have physical connection with. each other by means of connecting tracks. The spur track on which is constructed the plant of the Arkansas Brick & Manufacturing Company was laid in 1899 and was at that time within the yard limits of appellant company. The plant of the Arkansas Brick & Manufacturing Company is about one-half of a mile from the main track of the railroad company and is about three miles from the Union Station in the city of Little Rock, being situated in a southwesterly direction therefrom. In 1897 appellant fixed its yard limits on the south at a point about 1700 feet south of the switch connection of the railroad's main line with the spur track of the Arkansas Brick & Manufacturing Company's plant. The latter company secured the right of way for the railroad company and the railroad company constructed the track and operates it as a part of its railroad.

The Arkansas Brick & Manufacturing Company is engaged in the manufacture and sale of brick in carload lots. The Clark Pressed Brick Company is engaged in the same business at Malvern, Arkansas, its plant being situated 2945 feet distant from the station of appellant at Malvern, Ark.

In 1909 appellant established a rate of 1 cent per 100 pounds upon brick from its plant to and from points in Little Rock in car-load lots and filed its tariff with the Railroad Commission of Arkansas. The Railroad Commission disapproved its tariff and prohibited its enforcement. The reason was that the industrial track on which the plant of the Arkansas Brick & Manufacturing Company was situated was within the yard or terminal limits of the cities of Little Rock and Argenta and the rate established was higher than the town switching rate fixed by the Railroad Commission for movements between points within said yard and terminal limits.

The railroad companies of Arkansas including appellant brought suit in the Federal Court at Little Rock alleging that all rates put in force by the commission were confiscatory and prayed an injunction. Answer was filed by the Railroad Commission putting in issue the allegations of the complaint. During the pendency of this suit what is commonly called the court tariff became effective and continued in force during the whole period covered by the transactions which formed the basis of this suit. Little Rock and Argenta were treated for the purposes of town switching, as if they constituted but one city.

The court tariff provides that shipments from one industrial track to another shall be considered as town switching and shall be charged for at a certain rate per car, varying according to the number of miles the cars are carried. The court tariff fixed transportation rates at from two to eight cents per hundred pounds, depending upon the number of miles the shipment was carried. For instance, if the Arkansas Brick & Manufacturing Company should sell a car-load of brick to another company situated on an industrial track, the car would be carried from one track to the other at switching rates.

Again there are a number of team tracks in the city of Little Rock from which the public generally load and unload freight for shipment. If a car-load of

brick is carried from the company's plant to one of these team tracks the switching rate only is charged. In short, switching rates are charged for the movement of all freight within the yard limits in the cities of Little Rock and Argenta and movements of freight within these yard limits are made under the supervision of the yard master. If the Arkansas Brick & Manufacturing Company, or any other company which is situated on an industrial track, desires to ship freight to any other point in Arkansas, the regular transportation rate is charged the company from the union station in the city of Little Rock and no charge is made for hauling the shipment from the company's plant to the union station. The same rule is applied to incoming shipments, shipments from points in the city to the brick plant are charged switching rates and shipments from other places in the State are charged regular transportation rates from there to the union station at Little Rock and no charge is made for transporting the shipment from there to the company's plant. The same rule is observed with regard to the Clark Pressed Brick Company. No charge is made for service in hauling from that company's plant to the station at Malvern or from the station to the company's plant. The shipments from the plant take the regular transportation rate fixed by the Railroad Commission from the station at Malvern with reference to outgoing shipments and to the station at Malvern with reference to incoming shipments. When shipments are made from the Clark Pressed Brick Company's plant to industries on appellant's line of road in the cities of Little Rock and Argenta, no charge is made for switching to the various industrial tracks. The proof shows that the switching rates charged as above on car-load lots are smaller than would be the regular transportation rate. As we have already seen the rates charged both brick companies were fixed by the Railroad Commission acting under orders from the Federal Court in a suit pending by the railroad companies against the Railroad Commission.

The record does not show whether or not appellee applied to the Railroad Commission for relief. They seem to have proceeded on the theory that the action of the Railroad Commission in fixing the tariff was discriminatory as a matter of law and for that reason the courts could afford relief.

To sustain the judgment, counsel for appellee rely upon the case of *Dixon* v. *Central of Georgia Ry. Co.*, 110 Ga. 173, 35 S. E. 369, and other cases of like character, which hold that a switching or transfer service is one which precedes or follows a transportation service, and applies only to shipments on which legal freight charges have already been earned or are to be earned.

We do not think this alone is the test. Another test is whether the movement of cars is under the direction of the yard master or under orders from the train dispatcher. The yard master has charge of the switching service and the train master of transportation service. In determining the question another thing to be considered is that in order to afford facilities to shippers and to operate its line of road to the best advantage, a railroad company establishes a terminal district usually called its yards. In these yards, as in the present case, the railroad constructs industrial tracks, side tracks, team tracks, etc., for the accommodation of manufacturing establishments and other shippers situated within the terminal district. The switches are so built as to enable the railroad to take cars from the shippers at their places of business and deliver them to other points within its yard limits or to other lines of railway with which it has physical connection and also to deliver cars, received by it from other roads to consignees. If the cars are to be transported from its own line to destination or to come into the city over its own road the switching service is free. The charge for switching is only made when the goods are carried to the connection with another line of railroad or to and from other industrial plants and team tracks within the city. It is true that the fact that the

entire service rendered by railroad companies are confined to its own side or switch tracks will not prevent it from being transportation.

(1) In *Grand Trunk Ry. Co.* v. *Michigan Railroad Commission*, 231 U. S. 457, in upholding the validity of an order of the State Railroad Commission requiring that railroads shall accept freight for transportation between two points within the same city, as against the contention that such a service was not transportation service but was a switching service, the court said that a service calling for the use of the so-called terminal facilities of a connecting railroad does not lose what would otherwise be the quality, of transportation, from the mere facts either that the movement begins and ends within the switching or corporate limits of a city; or that the transportation is only between an intracity junction and team track or side track. In reaching that conclusion the supreme court of the United States recognized that a State is competent to create a Commission and give it the power of regulating railroads and investigating conditions upon which regulations may be directed; and that the judiciary will only interfere with such a commission when it appears that it has clearly transcended its power. In that case it was contended that the order of the commission was an appropriation of the terminal facilities of the railroad for the use and benefit of other railroads. The court said that transportation is the business of railroads and when that business may be regulated and to what extent regulated may depend upon circumstances. The extent of Detroit was about twenty-two miles; its population was about 500,000. Large and varied industries were situated within its limits. The court said that while a city may be a terminal unit of a railroad that considering the extent of Detroit it was competent for the state, under the conditions which the record presented, to consider points within it the beginning and destination of traffic.

In the present case we have the converse of the proposition. As we have just seen no inflexible rule

can be laid down. No case could better illustrate the value of the principle than does the present case. The cities of Little Rock and Argenta are only separated by the Arkansas river. Most of the terminal facilities of the railroads passing through these cities are in Argenta. Both cities combined have only a population of 65,000, and the industrial and manufacturing plants within their borders are necessarily few and the business transacted by them small in comparison with those situated within the limits of the city of Detroit. It will be readily seen that the question of discriminating in these matters may be the controlling facts by which to determine the validity or invalidity of the order of the Railroad Commission.

Again in the *Los Angeles Switching case,* 234 U. S. 294, in discussing the powers of the Interstate Commerce Commission, the court held that it is permissible for a railway company to establish a terminal district, and that it is for the commission to determine, according to the actual conditions of operation, whether an extra charge for spur track delivery within that district, regardless of the variations in distance, is either unreasonable or discriminatory.

(2) In the application of these principles of law it cannot be said that the condition and circumstances as shown by the record in this case presents such an exceptional case as to render the findings of the Railroad Commission unreasonable. When the population and commerce of Little Rock and Argenta are considered in connection with the number, length and situation of the side tracks, we do not think that an exceptional situation was created as was in the case of Detroit. For this reason the circuit court could not substitute its judgment for that of the Railroad Comission upon matters of fact within the province of the commission. Under the situation presented by the record, it can not be said that the action of the Railroad Commission in fixing the car-load rate for switching instead of tonnage rates for transportation for movement of car-load lots of freight between points within the termi-

nal district was unreasonable, and, therefore, subject to review by the courts.

It follows, therefore, 'that the court erred in finding for appellee and for that error the judgment will be reversed and inasmuch as the case has been fully developed the complaint of appellee will be dismissed here.